UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re | CIV. NO. 19-00502 LEK-WRP |
| Salvador Cacho Cordero | |
| Debtor. | |
| ANN LOU S. CORDERO, TRUSTEE OF THE ANN LOU S. CORDERO TRUST DATED MARCH 28, 1992; ET AL., | |
| Appellants, | |
| vs. | |
| RICHARD A. YANAGI, CHAPTER 11 TRUSTEE, | |
| Appellee. | |

**ORDER DENYING BANKRUPTCY APPEAL AND AFFIRMING THE
BANKRUPTCY COURT'S ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AGAINST ANN LOU S. CORDERO, TRUSTEE
OF THE ANN LOU S. CORDERO TRUST, DATED MARCH 28, 1992**

On September 9, 2019, Appellants Salvador Cacho

Cordero, individually and as Trustee of the Sal C. Cordero Trust

dated March 28, 1992, as amended and restated in its entirety on

October 7, 2014 ("Salvador Cordero"); Ann Lou S. Cordero,

individually and as Trustee of the Ann Lou S. Cordero Trust

dated March 28, 1992, as amended and restated in its entirety on

October 7, 2004 ("Ann Cordero" and collectively with Salvador

Cordero, "the Corderos"); and Trust Beneficiaries Malia Cordero,

Garrett Gonzalves, and Kelly Ann Gonzalves, a minor child

through Parent Malia Cordero (collectively with the Corderos,

"Appellants") filed their appeal from the bankruptcy court's

summary judgment order ("Appeal"), and the bankruptcy court

subsequently transmitted the appeal to this district court.

[Notice of Transmittal to District Court ("Transmittal Notice"),

filed 9/17/19 (dkt. no. 1).]  On July 2, 2020, Appellants filed

their Opening Brief.  [Dkt. no. 23.]  On August 14, 2020,

Appellee Richard A. Yanagi, Chapter 11 Trustee ("Trustee"),

filed his answering brief, and on August 29, 2020, Appellants

filed their Reply Brief.  [Dkt. nos. 28, 33.]  The Appeal came

on for hearing on October 2, 2020.  On January 15, 2021, an

entering order was issued informing the parties of this Court's

ruling.  [Dkt. no. 37.]  This order supersedes that entering

order.  The Appeal is hereby denied for the reasons set forth

below.

<u>**BACKGROUND**</u>

I.   <u>**Bankruptcy Proceedings**</u>

This lawsuit arises out of Salvador Cordero's

October 15, 2017 chapter 11 bankruptcy filing.  [<u>In re Salvador</u>

<u>Cacho</u> Cordero, Bankr. Case No. 17-01071 ("Bankruptcy Case" or

"Bankr. No. 17-01071"), dkt. no. 1.]  Listed among Salvador

Cordero's property interests was 1764B South Kihei Road ("the Property"), an investment property located in Kihei, Hawai`i. [Bankr. No. 17-01071, Schedules, filed 11/7/17 (dkt. no. 20), at 1 of 30; id., Amended Schedules, filed 11/27/17 (dkt. no. 38), at 3 of 17.]  The Property was one of seven real estate interests owned in whole or in part by Salvador Cordero.  [Id., Amended Schedules at 2-5 of 17.]  Ann Cordero was the co-owner of the Property.  See, e.g., Yanagi v. Ann Lou S. Cordero, et al., Bankr. Adv. Proceeding No. 19-90019 ("Adversary Proceeding"), Separate and Concise Statement of Facts ("CSOF"), filed 7/26/19 (dkt. no. 21), Exhs. 1-4 (multiple deeds cumulatively indicating Salvador Cordero and Ann Cordero were each transferred a fifty percent undivided interest in the Property as tenants in common).  On November 17, 2017, Salvador Cordero filed a motion to sell the Property for $1,700,000, along with another real estate interest in 1794 South Kihei Rd., Kihei, Hawai`i for $1,500,000, to the Shalom Amar Revocable Trust.  [Bankr. No. 17-01071, Motion to Sell Property, filed 11/17/17 (dkt. no. 32).]  However, that motion to sell the Property was denied.  [Id., Order Denying Debtor's Motion for an Order Approving Sale of Properties, filed 1/16/18 (dkt. no. 88).]  On January 18, 2018, the motion to appoint the Trustee was granted.  [Id., bankruptcy court order granting

motion for appointment of chapter 11 trustee, filed 1/18/18
(dkt. no. 97).]

On December 9, 2018, Salvador Cordero's bankruptcy
counsel passed away, see id., Suggestion of Death, filed
12/11/18 (dkt. no. 209), and Salvador Cordero represented
himself pro se throughout the remainder of his bankruptcy case.

On April 29, 2019, the Trustee filed the underlying
Adversary Proceeding to sell both Salvador Cordero's and Ann
Cordero's interest in the Property.  [Opening Brief, App'x Part
One, Exh. 4 (Chapter 7 Trustee's Complaint to Sell Interest of
Estate and Co-Owners' Interest in Property Under 11 U.S.C.
§ 363(h) ("Adversary Proceeding Complaint")).]  Meanwhile, on
June 3, 2019, in the underlying Bankruptcy Case, the Trustee
filed his Motion for Order Approving (1) Sale of Real Property
Free and Clear of Liens and Encumbrances (1764 S. Kihei Road);
and (2) Disbursement of Proceeds ("6/3/19 Motion"), seeking to
sell the Property pursuant to § 363(b) and (f).  [Errata to
Appellee Richard A. Yanagi's Suppl. App'x of Excerpts of Record
("A" though "S") ("Suppl. App'x"), filed 8/17/20 (dkt. no. 30),
App'x E (6/3/19 Motion).]  In the 6/3/19 Motion, the Trustee
represented that Salvador Cordero and Ann Cordero both signed a
counteroffer for the Property, thereby entering into a purchase
agreement for the sale of the Property for $1.5 million.  [Id.
at 5 & Exh. A (Purchase Contract, accepted 5/3/19, bearing the

4

signature of, among others, Ann Cordero).]  On June 17, 2019,

Salvador Cordero filed a motion to dismiss his chapter 11

Bankruptcy Case.  [Bankr. No. 17-01071, Debtor's Motion to

Dismiss Chapter 11 Case, filed 6/17/19 (dkt. no. 245).]  Also on

June 17, 2019, Salvador Cordero filed a document titled

"Debtor's Motion to Dismiss Chapter 7 Case; Notice of Hearing,"

("Second 6/17/19 Filing") in which he objected to the sale of

the Property and argued that Ann Cordero had not signed the

purchase agreement for the Property.  [Suppl. App'x F (Second

6/17/19 Filing,).]

     On June 28, 2019, the bankruptcy court held a

scheduling conference for the Adversary Proceeding, however, Ann

Cordero was unable to attend due to illness, and the status

conference was postponed until July 1, 2019.  [Opening Brief,

App'x Part Two, Exh. 11 (Trans. of 6/28/19 Scheduling

Conference, filed 12/6/19) at 4, 7.]  On July 1, 2019, the

bankruptcy court heard argument on the 6/3/19 Motion, as well as

one or more of the documents filed as motions to dismiss, and it

held a scheduling conference in the Adversary Proceeding

("7/1/19 Hearing").  [Id., Exh. 13 (Trans. of 7/1/19 Hearing on

Motion to Dismiss; Scheduling Conference, filed 12/6/19 ("7/1/19

Trans.")).]  The bankruptcy court acknowledged that Ann Cordero

appeared to not want to sell the Property, but granted the

6/3/19 Motion, noting that the sale would not happen if Ann

Cordero refused to sign the closing papers.  [Id. at 11, 10.]
The bankruptcy court also denied Salvador Cordero's motion(s) to
dismiss.  [Id. at 16.]

On July 26, 2019, the Trustee filed his Motion for
Summary Judgment Against Ann Lou S. Cordero, Trustee of the Ann
Lou S. Cordero Trust Dated March 28, 1991 ("Motion for Summary
Judgment") in the Adversary Proceeding.  [Suppl. App'x L (Motion
for Summary Judgment).]  On August 8, 2019, Ann Cordero filed
her opposition to the Motion for Summary Judgment, [id., App'x N
(opposition),] and on August 16, 2019, the Trustee filed his
reply, [id., App'x O (reply)].  On August 23, 2019, the
bankruptcy court held a hearing on the Motion for Summary
Judgment ("8/23/19 Hearing").[1]  [Opening Brief, App'x Part Two,
Exh. 12 (Trans. of 8/23/19 Hearing, filed 12/6/19 ("8/23/19
Trans.")).]  At the 8/23/19 Hearing, the bankruptcy court
granted the Motion for Summary Judgment, stating,

> [a]ll the statutory requirements for this sale
> are clearly met.  The only real question is
> whether a refinancing is possible that could
> reduce [sic] as much or more money.
>
> The bankruptcy case has been going on for
> roughly two years now, give or take, which is a
> pretty long time for a bankruptcy case to be

---

[1] At the 8/23/19 Hearing, Ann Cordero was represented by
specially appearing counsel Michael J. Collins, Esq.  [Opening
Brief, App'x Part Two, Exh. 12 (8/23/19 Trans.) at 1.]  Other
than the 8/23/19 Hearing, Ann Cordero proceeded pro se in the
Adversary Proceeding, until September 9, 2019.  See id., Exh. 14
(Notice of Appearance filed by Gary Dubin, Esq.).

> going on.  This particular adversary hasn't been
> going on for too long, but this adversary was
> only really required because there was an
> apparent change in position about a voluntary
> sale of the property.
>
> So I think there have been plenty of
> opportunities to come up with alternatives.  It
> looks like a sale undoubtedly together with the
> non-Debtor's interest is going to produce more
> for everybody than a sale of the undivided
> interests would and the other requirements under
> 363(h) are met.  So I'm going to grant the
> motion.

[Id. at 7-8.]  On August 26, 2019, the bankruptcy court issued

its order granting the Motion for Summary Judgment ("8/26/19

Order") "for reasons stated for the record," and authorized the

Trustee to sell the Property, including Ann Cordero's interest,

pursuant to § 363(h).  [Opening Brief, App'x Part One, Exh. 8

(8/26/19 Order) at PageID #: 430-31.]  On September 9, 2019, Ann

Cordero, along with the other Appellants, filed their notice of

appeal, [Transmittal Notice at PageID #: 3-14 (notice of

appeal),] but did not seek a stay pending appeal.  On

October 28, 2019, the Trustee filed the Report of Sale,

accounting for proceeds of the sale of the Property to third-

party purchasers.  [Opening Brief, App'x Part Two, Exh. 15

(Report of Sale).]

At the hearing on June 22, 2020, Ann Cordero objected

to the Trustee's proposed chapter 11 plan, which the bankruptcy

court overruled, and at that same hearing Ann Cordero asked for

a continuance, which the bankruptcy court denied, and as was a motion for reconsideration.  See Bankr. No. 17-01071, Order Denying Motion for Reconsideration, filed 7/6/20 (dkt. no. 331).

On July 16, 2020, the bankruptcy court issued its Order Confirming [First Amended] Combined of Reorganization and Disclosure Statement ("Confirmation Order").  [Suppl. App'x K (Confirmation Order).]  Therein, the bankruptcy court confirmed the Trustee's proposed chapter 11 plan ("the Plan").  See id. at PageID #: 1034-35; id., Exh. A (the Plan).  Notably, the Plan identifies Ann Cordero as a creditor of Salvador Cordero's bankruptcy estate, [Suppl. App'x K, Exh. A (the Plan) at 36,] although Ann Cordero was not listed on either the original or amended schedules,[2] nor did she file a proof of claim.[3]

---

[2] See Bankr. No. 17-01071, dkt. nos. 20, 38

[3] Fed. R. Bankr. P. 3003(c)(1)-(3) provides:

Filing of proof of claim

(1)  Who may file

Any creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule.

(2)  Who must file

Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule;

(. . . continued)

Regardless, Ann Cordero was the only creditor in the Plan to have not filed a proof of claim and still receive a distribution.  See id. at 33-38 (listing creditors to be paid under the Plan and noting whether they filed a proof of claim). Under the terms of the Plan, Ann Cordero was to receive the bankruptcy estate's interest in three pieces of real property: 217 Kono Place, Kauhului, Hawai`i 96732 ("217 Kono"); 457 One Street, Kahului, Hawai`i 96732 ("the Residence"); and 20 units of a condominium complex known as 291 Hookahi Street, Units 101-110 and 201-210, Wailuku Hawai`i 96793 ("Hookahi Property"). [Id. at 3-4, 10, 36-37.]

The Plan also provides for a distribution to creditor Edwin Caraang, [id. at 37-38,] who filed a proof of claim asserting a $749,500 debt secured by an interest given by the Corderos together in the Hookahi Property ("Caraang Proof of Claim").  See Bankr. Case No. 17-01071, Claims Register, Claim

---

any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3)  Time for filing

The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.  Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6).

12-1, filed 2/16/18.  However, the Plan also required

Mr. Caraang to return a diamond ring purportedly worth $200,000

to Ann Cordero that had apparently been transferred to

Mr. Caraang as security or collateral for the loan.  See Suppl.

App'x K, Exh. A (the Plan) at 38; Bankr. No. 17-01071, Objection

to Claim No. Unsecured, filed 6/17/19 (dkt. no. 249) (objecting

to the claim generally and arguing that the ring was not to be

returned and instead the appraised value of the ring must be

applied to reduce the loan balance).  The ring had not

previously been accounted for in the Schedules, Amended

Schedules, or Mr. Caraang's Proof of Claim.

On September 29, 2020, the bankruptcy court issued its

Order Granting Motion for Entry of Final Decree and Order

Closing Chapter 11 Case ("9/29/20 Order").  [Bankr. No. 17-

01071, 9/29/20 Order, filed 9/29/20 (dkt. no. 368).]

In the instant Appeal, Appellants argue that the

bankruptcy court lacked subject matter jurisdiction over Ann

Cordero as a nondebtor in the Bankruptcy Case.  Appellants also

argue the bankruptcy court abused its discretion by: 1) not

considering, or rendering findings of fact for, the § 363(h)

factors; 2) not considering, or rendering finds of fact related

to, § 363(j); 3) denying Ann Cordero adequate time to purchase

the Property as required by § 363(h)(2);[4] and 4) failing to adequately consider Ann Cordero's ability to refinance the Property herself.  [Opening Brief at 9-10.]  Appellants ask that this Court either

> reverse the Bankruptcy Court on jurisdictional grounds and order the property returned to Sal and Ann Cordero or recall the reference and hold an evidentiary hearing for the purpose of surcharging the Trustee and the Estate for Ann's and Sal's losses, as well as issue orders to show cause why they were literally successively abandoned by retained counsel.

[Id. at 10-11.]

### STANDARD

"Findings of fact of the bankruptcy court are reviewed for clear error, and conclusions of law are reviewed de novo. Mixed questions of law and fact are reviewed de novo."  In re Point Ctr. Fin., Inc., 957 F.3d 990, 995 (9th Cir. 2020) (citations omitted).  "

> Section 363(h) permits a trustee to
>
> sell both the estate's interest, under subsection (b) or (c) of this section,[5] and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

---

[4] Although Appellants cite to § 363(h)(2), the Court assumes that Appellants intended to cite § 363(i).

[5] Subsections (b) and (c) of § 363 allow the trustee to use, sell, or lease property of the bankruptcy estate within, or outside of, the normal course of business, subject to certain conditions, which are not relevant to the instant Appeal.

    (1)  partition in kind of such property
among the estate and such co-owners is
impracticable;

    (2)  sale of the estate's undivided interest
in such property would realize significantly
less for the estate than sale of such
property free of the interests of such co-
owners;

    (3)  the benefit to the estate of a sale of
such property free of the interests of co-
owners outweighs the detriment, if any, to
such co-owners; and

    (4)  such property is not used in the
production, transmission, or distribution,
for sale, of electric energy or of natural
or synthetic gas for heat, light, or power.

Pursuant to § 363(m),

[t]he reversal or modification on appeal of an
authorization under subsection (b) or (c) of this
section of a sale or lease of property does not
affect the validity of a sale or lease under such
authorization to an entity that purchased or
leased such property in good faith, whether or
not such entity knew of the pendency of the
appeal, unless such authorization and such sale
or lease were stayed pending appeal.

The Court must also

address whether this appeal is moot under the
doctrine commonly known as "equitable mootness,"
which has some sway in bankruptcy cases where
public policy values the finality of bankruptcy
judgments because debtors, creditors, and third
parties are entitled to rely on a final
bankruptcy court order.  See, e.g., In re Onouli-
Kona Land Co., 846 F.2d 1170, 1172 (9th Cir.
1988) (noting the need for finality in
bankruptcy); 13B FEDERAL PRACTICE & PROCEDURE
§ 3533.2.3 (3d ed.) ("Bankruptcy appeals provide
numerous examples of the need to protect third

party interests arising from substantial
implementation of a reorganization plan pending
appeal.").  Equitable mootness occurs when a
"comprehensive change of circumstances" has
occurred so "as to render it inequitable for this
court to consider the merits of the appeal."  In
re Roberts Farms, 652 F.2d 793, 798 (9th Cir.
1981).  The question is whether the case
"present[s] transactions that are so complex or
difficult to unwind that the doctrine of
equitable mootness would apply."  Lowenschuss v.
Selnick (In re Lowenschuss), 170 F.3d 923, 933
(9th Cir. 1999). . . .

[The Ninth Circuit] endorse[s] a test
similar to those framed by the circuits that have
expressed a standard: [the Court] will look first
at whether a stay was sought, for absent that a
party has not fully pursued its rights.  If a
stay was sought and not gained, [the Court] then
will look to whether substantial consummation of
the plan has occurred.  Next, [the Court] will
look to the effect a remedy may have on third
parties not before the court.  Finally, [the
Court] will look at whether the bankruptcy court
can fashion effective and equitable relief
without completely knocking the props out from
under the plan and thereby creating an
uncontrollable situation for the bankruptcy
court. . . .

See Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re

Thorpe Insulation Co.), 677 F.3d 869, 880-81 (9th Cir. 2012)

(some alterations in In re Thorpe).

## DISCUSSION

The purpose of the Bankruptcy Code is to provide a

procedure by which honest but unfortunate "insolvent debtors can

reorder their affairs, make peace with their creditors, and

enjoy a new opportunity in life with a clear field for future

effort, unhampered by the pressure and discouragement of preexisting debt." Grogan v. Garner, 498 U.S. 279, 286 (1991) (citation and internal quotation marks omitted). To achieve this goal, the bankruptcy court is entrusted with certain discretionary authority. Pursuant to 11 U.S.C. § 105(a),

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

However, the bankruptcy court's § 105(a) powers are not without limit. As expressed by the Ninth Circuit with respect to the equitable powers of the judiciary,

> the Supreme Court has consistently reminded us of our duty to follow the law as enacted by Congress, not as judged by our convictions. See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010) ("We must enforce plain and unambiguous statutory language according to its terms."); Pavelic & LeFlore v. Marvel Entm't Grp., 493 U.S. 120, 126, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989) ("Our task is to apply the text, not to improve upon it."). This command does not change when the matter involves bankruptcy. "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988). Accordingly, when it comes to interpreting the Code, we are not at liberty to "alter the balance struck by the statute." Czyzewski v. Jevic Holding Corp., —

14

-- U.S. ----, 137 S. Ct. 973, 987, 197 L. Ed. 2d
398 (2017) (simplified).

In re Albert-Sheridan, 960 F.3d 1188, 1195 (9th Cir. 2020) (some
alterations in Albert-Sheridan), *cert. denied sub nom.* Albert-
Sheridan v. State Bar of Cal., No. 20-6081, 2021 WL 78294 (U.S.
Jan. 11, 2021), and *cert. denied sub nom.* State Bar of Cal. v.
Albert-Sheridan, No. 20-519, 2021 WL 78485 (U.S. Jan. 11, 2021).

## I.   **Section 363(h), (m), (j) and Mootness**

A bankruptcy court's order authorizing a § 363(h) sale
is reviewed for abuse of discretion.   Probasco v. Eads (In re
Probasco), 839 F.2d 1352, 1357 (9th Cir. 1988).   A bankruptcy
court "abuses its discretion if it does not apply the correct
law or if it rests its decision on a clearly erroneous finding
of material fact."   See S.E.C. v. Coldicutt, 258 F.3d 939, 941
(9th Cir. 2001) (citation omitted).

Generally, prior to authorizing a trustee to take and
sell the property of a nondebtor, the best practice is to make
specific factual findings that each § 363(h) factor is met.
See, e.g., Zimmerman v. Spickelmire (In re Spickelmire), 433
B.R. 792, 799-805 (Bankr. D. Idaho 2010).   Similarly, to ensure
finality of bankruptcy decisions as codified in § 363(m), it is
imperative that the bankruptcy court make the factual finding
that the purchase is consummated in good faith.   See, e.g., Debt
Acquisition Co. of Am. V, LLC v. Warner Springs Ranchowners

Ass'n (In re Warner Springs Ranchowners Ass'n), Civil No.

13cv1170-WQH-WVG, 2013 WL 6633997, at *4 (S.D. Cal. Dec. 17,

2013).  Finally, the bankruptcy court must follow the dictates

of § 363(j) when a sale is conducted pursuant to this subsection

because

> [s]ection 363(j) mandates that, after the sale of
> the co-owned property, "the trustee **shall**
> distribute to . . . the co-owner of such property
> . . . the proceeds of such sale . . . according
> to the interests of such . . . co-owner and of
> the estate."  11 U.S.C. § 363(j) (emphasis
> added).  Again, the plain language of the statute
> directs the trustee immediately to distribute
> proceeds after the sale.  Thus, the bankruptcy
> court erred when it permitted the trustee
> indefinitely to withhold [the nondebtor co-
> owner's] portion of the sale proceeds.

Stine v. Diamond (In re Flynn), 418 F.3d 1005, 1008 (9th Cir.

2005) (some alterations and emphasis in Flynn).

None of the subsections of § 363 were followed in the

Adversary Proceeding.  Instead, the bankruptcy court granted

summary judgment in favor of the Trustee and authorized a

§ 363(h) sale of Ann Cordero's interest in the Property four

months after the Adversary Complaint was filed, and while Ann

Cordero was, in effect, pro se.  In doing so, the bankruptcy

court did not make any findings of fact with respect to

§ 363(h)(1), (3), and (4),[6] and made only a conclusory remark as

to § 363(h)(2).  See Opening Brief, App'x Part Two, Exh. 12

---

[6] Section 363(h)(4) is not in serious dispute.

(8/23/19 Trans.) at 8.  The 8/26/19 Order was also silent as to the good faith of the third-party purchasers.  See generally Opening Brief, App'x Part One, Exh. 8 (8/26/19 Order).  Despite the statutory mandate to immediately distribute Ann Cordero's share of the proceeds from the sale of the Property to her, the Trustee did not do so.  See Answering Brief at 23 (acknowledging that Ann Cordero's share of the sales proceeds from the sale of the Property were not distributed to her).  While these omissions are glaring, it is undisputed that Ann Cordero did not obtain a stay pending appeal.  Moreover, she received considerable value from both Salvador Cordero's bankruptcy estate and creditors of his estate, see Suppl. App'x K, Exh. A (the Plan) at 36-38, as well as a significant benefit when debts (for which she was also liable) were paid by the Trustee with proceeds from the sale of the Property, see, e.g., Bankr. No. 17-01071, Caraang Proof of Claim; Suppl. App'x K, Exh. A (the Plan) at 37-38.  It is clear that: (1) Ann Cordero received significant value following the § 363(h) sale; (2) despite being represented by counsel at the time, she failed to **seek** a stay pending appeal of the 8/26/19 Order; and (3) the Property was

transferred to third-party purchasers.  The four-factor equitable mootness analysis must therefore be applied.[7]

A.  **Equitable Mootness Analysis**

With respect to the first factor, whether Ann Cordero was diligent pursuing her rights, the fact that she did not seek a stay necessarily results in a finding that Appellants "ha[ve] not fully pursued [their] rights."  See In re Thorpe, 677 F.3d at 881.  As explained by the Ninth Circuit:

> Courts must be cautious in applying equitable mootness when a party has been diligent about seeking a stay.  [Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.) ("]Mortgages II["]), 771 F.3d [623,] 628 [(9th Cir. 2014)].  "To say that a party's claims, although diligently pursued, are equitably moot because of the passage of time, before the party had a chance to present views on appeal, would alter the doctrine to be one of 'inequitable mootness.' . . .  [I]t would be inequitable to dismiss their appeal on equitable mootness grounds merely because the reorganization has proceeded."  In re Thorpe, 677 F.3d at 881.
>
> [Rev Op Group v. ML Manager LLC (In re Mortgages Ltd.) ("]Mortgages I["], 771 F.3d 1211 (9th Cir. 2014),] and Mortgages II together highlight the importance of diligence in the equitable mootness analysis.  In Mortgages I, the appellant had failed to seek a stay while pursuing an appeal.  771 F.3d at 1214.  That the appellant had sat on its rights weighed heavily in favor of holding the appeal equitably moot.  Id. at 1217.  In Mortgages II, by contrast, the appellant had sought a stay pending the appeal.  771 F.3d at 627.  We held that the appeal was not

---

[7] Appellants have presented no arguments responsive to the Trustee's assertion of statutory or equitable mootness in either their Opening Brief or Reply Brief.

equitably moot and, in doing so, specifically emphasized the request for a stay as a factor differentiating it from Mortgages I.  See Mortgages II, 771 F.3d at 629 ("Unlike in [Mortgages I], [appellant] diligently pursued its rights by seeking a stay of the Declaratory Judgment Order, even though it was unable to obtain the stay.").

JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props. Inc. (In re Transwest Resort Props., Inc.), 801 F.3d 1161, 1168 (9th Cir. 2015) (some alterations in In re Transwest).  Appellants here sat on their rights, and the case progressed accordingly.  This factor weighs in favor of finding that equitable mootness precludes relief.

The second factor is

"whether substantial consummation of the plan has occurred."  In re Thorpe, 677 F.3d at 882; see also Mortgages II, 771 F.3d at 628-29. The term "substantial consummation" is defined in the Bankruptcy Code as:

(A)  transfer of all or substantially all of the property proposed by the plan to be transferred;

(B)  assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C)  commencement of distribution under the plan.

11 U.S.C. § 1101(2).

Id.  Given the Trustee's counsel's representations that distributions were made under the Plan, including to Ann

19

Cordero, see Bankr. No. 17-01017, Chapter 11 Trustee's Motion

for Entry of a Final Decree and Order Closing Chapter 11 Case,

filed 9/4/20 (dkt. no. 349), at 3-4, and with no evidence

presented to the contrary, this Court finds that substantial

consummation of the plan has occurred.  The second factor

therefore also weighs in favor of finding equitable mootness.

The third factor involves

> whether the relief sought would bear unduly
> on innocent third parties.  In re Thorpe, 677
> F.3d at 882; Mortgages II, 771 F.3d at 629.  To
> evaluate this, we must ask "whether it is
> possible to [alter the plan] in a way that does
> not affect third party interests to such an
> extent that the change is inequitable."  In re
> Thorpe, 677 F.3d at 882.  Third parties' reliance
> on the consummation of the plan is not enough to
> find this prong satisfied.  Rather, for this
> factor to weigh in favor of holding a party's
> appeal to be equitably moot, the specific relief
> sought must bear unduly on innocent third
> parties.  See id.

In re Transwest, 801 F.3d at 1169.

Although Appellants ask that this Court order the

bankruptcy court to claw back the Property from third-party

purchasers, they have not offered any evidence addressing: who

currently owns the Property, that is, if any transfers occurred

after the Trustee's initial sale to third-party purchasers; what

it would take to enact such an order; or how that transaction

would affect the relevant third-parties.  Also, clawing back the

Property would have untold effects on the remainder of the Plan

and other creditors, including the property interests distributed to Ann Cordero.  Thus, "[t]he transfer to a third party precludes meaningful relief."  See Baker & Drake, Inc., v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.), 35 F.3d 1348, 1351 (9th Cir. 1994) (citation omitted).  The third factor also weighs in favor of finding that equitable mootness exists.

The fourth factor is whether it is possible for the bankruptcy court to "fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation."  See In re Thorpe, 677 F.3d at 881.  Unwinding the transactions between Ann Cordero, Sal Cordero, and multiple third parties would be uncontrollable, highly inequitable, and (in the absence of a stay) direct contravention of the need for finality and reliability of bankruptcy court decisions.  In sum, it is necessary for litigants to actively protect their own interests because limited relief is available if there is no stay imposed before the case proceeds to distribute assets in a way that affects third-parties' rights and businesses.  The fourth factor also weighs in favor of finding that equitable mootness exists.

Having resolved that, under the In re Thorpe four-factor analysis, all factors favor a finding that equitable mootness exists, this Court concludes that the Appeal is equitably moot and relief is precluded.

## II.  **Other Arguments**

Because equitable mootness exists, this Court declines to address Appellants' other arguments.  Although Appellants assert, without citing legal support, that the bankruptcy court lacked jurisdiction because the § 363(h) sale did not involve a core proceeding, this argument is meritless.  As another district court artfully explained with respect to § 363(h):

> The bankruptcy court has jurisdiction to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."  28 U.S.C. § 157(b)(1).  In addition, bankruptcy judges may hear non-core proceedings that are "related" to a bankruptcy case, but may only submit proposed findings of fact and conclusions of law to the district court.  28 U.S.C. § 157(c)(1); see also Security Farms v. International Broth. of Teamsters, 124 F.3d 999, 1008 (9th Cir. 1997). Proceedings "arise under title 11 if they involve a cause of action created or determined by a statutory provision of title 11."  In re Marshall, 600 F.3d at 1054 (citations omitted). Title 11 provides a non-exhaustive list of "core proceedings."  See 11 U.S.C. § 157(b)(2).  "A bankruptcy judge may only determine a claim that meets Congress' definition of a core proceeding and arises under or arises in title 11."  In re Marshall, 600 F.3d 1037, 1055 (9th Cir. 2010) (citing 28 U.S.C. § 157(c)).

Birdsell v. Schneider, No. CV-11-0484-PHX-FJM, 2011 WL 1540145, at *1 (D. Ariz. Apr. 22, 2011).  Therefore, the case will not be remanded for lack of jurisdiction.

## <u>CONCLUSION</u>

For the foregoing reasons, Salvador Cordero, Ann Cordero, and the other Appellants' Appeal, filed September 9, 2019, is HEREBY DENIED, and the bankruptcy court's Order Granting Plaintiff's Motion for Summary Judgment Against Ann Lou S. Cordero, Trustee of the Ann Lou S. Cordero Trust Dated March 28, 1992, filed August 26, 2019 in Bankruptcy Adversary Proceeding No. 19-90019, is HEREBY AFFIRMED.  The Clerk's Office is DIRECTED to enter final judgment and close this case on **April 6, 2021,** unless a timely motion for reconsideration is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 22, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ANN LOU S. CORDERO, ETC, ET AL. VS. RICHARD YANAGI; CV 19-00502 LEK-WRP; ORDER DENYING BANKRUPTCY APPEAL AND AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ANN LOU S. CORDERO, TRUSTEE OF THE ANN LOU S. CORDERO TRUST, DATED MARCH 28, 1992**